IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WALTHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOUTHWEST AIRLINES CO., | ) |
| | ) |
| Defendant. | ) **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Michael Walthall, by his attorneys Favaro & Gorman, Ltd., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"), complains of defendant Southwest Airlines Co. for refusing to hire him as a Customer Service Agent because he cannot walk. Southwest offered Walthall the job after its experienced representatives carefully considered his qualifications, his limitations and the requirements of the position. Southwest's management then fabricated an excuse to withdraw its offer.

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332(a) (diversity); 28 U.S.C. § 1343(a)(4) (civil rights); 28 U.S.C. § 1367 (supplemental jurisdiction); and 42 U.S.C.§ 12117(a) (ADA).

2. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue generally), because Southwest is subject to this Court's personal jurisdiction, and a substantial part of the events giving rise to Walthall's claim arose in this district; and 42 U.S.C. § 12117(a) (ADA).

## Jurisdictional Prerequisites

3. Walthall filed a charge of discrimination with the federal Equal Employment Opportunity Commission, cross-filed with the Illinois Department of Human Rights, on July 26, 2023, attached as Exhibit A to this complaint.

4. The EEOC issued Walthall a Notice of Right to Sue on April 4, 2025. Exhibit B.

5. IDHR issued Walthall a Notice of Dismissal and Closure on June 10, 2025. Exhibit C.

## Parties

6. Plaintiff Michael Walthall is a 36 year old male with a spinal injury that requires his use of a wheelchair.

7. Southwest is the fourth largest airline in the United States. Its headquarters and principal place of business are in Dallas, Texas. It is a Texas corporation doing business in Illinois at Midway Airport in Chicago. Its 2024 assets were $33.7 billion and revenue $27.5 billion.

## Despite His Disability, Walthall Was Qualified For Southwest's Available Customer Service Position

8. In 2015 and 2016, Walthall worked for United Airlines as a ramp agent at O'Hare. In his position, he loaded and unloaded baggage and cargo from airplanes, guided aircraft to and from gates, and operated ground support equipment.

9. As Walthall was driving home from work on March 3, 2016, a car pulled up beside him, and the occupants fired multiple gunshots in his direction. He was hit by several bullets, suffering injuries to his lungs and spinal cord.

10. The damage to Walthall's spinal cord caused paralysis in his legs, requiring him to use a wheelchair and ending his career as a United Airlines' ramp agent.

11.     Wanting to maintain his independence, Walthall earned a degree in Business Administration, and successfully worked in customer service and management roles.

12.     While employed as an administrative coordinator, on August 9, 2022 Walthall applied for a customer service agent position with Southwest at Midway. Walthall was highly qualified for the position, having relevant customer service and airport experience. He knew that his disability would not prevent him from successfully doing the job.

### Southwest Evaluated Walthall's Abilities Against The Job Requirements And Offered Him The Position.

13.     Southwest invited him to interview for the position, and on August 31, 2022, he had an interview with a Southwest recruiter. At the interview, he was open about his disability.

14.     The recruiter, herself a former customer service agent, told Walthall that he was a great candidate for the position and that she did not believe his disability would impact his ability to successfully perform the job.

15.     Southwest offered Walthall the customer service agent position by email on September 20, 2022, and sent him details on the next steps for his screening/onboarding process.

16.     Walthall met with a member of Southwest's "ADA Team" on September 30, 2022 to tour Midway in order to identify potential needs for accommodation.

17.     Touring the departures and arrivals areas, the baggage claim area, the lost and found area, and the boarding area, the Southwest ADA representative and Walthall agreed that only minor adjustments to computer monitors would be required to accommodate his ability to do the job.

### Walthall Quit His Job To Work At Southwest; Southwest Withdrew Its Offer And Refused To Consider Him For Any Other Position

18. Believing he was to begin his new position at Southwest, Walthall submitted his resignation to the rehabilitation facility where he was working.

19. On October 22, 2022, Walthall received a call from the Southwest employee on its ADA team. The employee informed Walthall that Southwest was rescinding its job offer. Southwest claimed that the wheels of Walthall's wheelchair were too large to fit properly behind the ticket counter in the airlines arrivals and departures areas of the terminal.

20. Southwest's employee did not mention the possibility of an accommodation, attempt to engage in an interactive process to identify potential accommodations, or discuss Southwest's alleged problem with Walthall to try to find a solution.

21. During his tour with Southwest's ADA representative, Walthall had found that his wheelchair fit comfortably behind the ticket counter. Further, Walthall could use a smaller wheelchair, and alternatively, he was willing to have a custom wheelchair made for him at his own expense.

22. Still searching for a job as of March of 2023, Walthall saw a Southwest job posting for a customer service supervisor position at Midway.

23. Knowing that his education and managerial experience qualified him for the position, Walthall applied online. However, he received an automated notification that Southwest has a waiting period before a candidate for a previous position can apply for another position. Because Southwest had rescinded its offer for the customer service agent job, Southwest would not consider him for the position.

4

## Count 1 – Americans with Disabilities Act
## Discrimination Due To Disability
## Failure To Hire

Paragraphs 1 through 23 are incorporated by reference.

24. The ADA prohibits an employer from discriminating against a job applicant who is a qualified individual with a disability. 42 U.S.C. § 12112.

25. The ADA requires an employer to enter into an "interactive process" with a job applicant who is a qualified individual with a disability to identify reasonable accommodations that would enable the applicant to perform the essential functions of the position.

26. Southwest was an "employer," and Walthall was an applicant within the meaning of the ADA. 42 U.S.C. § 12111.

27. Walthall was a qualified individual with a disability because: 1) being unable to walk is a disability; 2) he met the skill, experience, education, and other requirements of job he had accepted; and 3) he could perform the essential functions of the position with minimal reasonable accommodations. 42 U.S.C. § 12111.

28. Southwest violated the ADA by rescinding its offer of a customer service agent position to Walthall because he cannot walk.

29. Southwest violated the ADA by failing to enter into an interactive process with Walthall to identify reasonable accommodations which would have permitted him to perform the essential functions of a customer service agent.

30. As the direct result of Southwest's violation of the ADA, Walthall suffered damages in the form of past and future compensation, loss of benefits, and extreme emotional distress.

## Count 2 – Illinois Human Rights Act
## Discrimination Due To Disability
## Failure to Hire

Paragraphs 1 through 23 are incorporated by reference.

31.  Southwest was an "employer" within the meaning of the IHRA. 775 ILCS 5/2-101.

32.  The IHRA prohibits an employer from discriminating against an applicant for employment due to the applicant's disability. 775 ILCS 5/2-102(A).

33.  Walthall suffered from a disability – his inability to walk. 775 ILCS 5/1-103(I).

34.  Southwest violated the IHRA by withdrawing Walthall's job offer because he has a disability.

35.  As the direct result of Southwest's violation of the IHRA, Walthall suffered damages in the form of past and future compensation, loss of benefits, and extreme emotional distress.

Wherefore, plaintiff Michael Walthall requests that the Court enter judgment in his favor against defendant Southwest Airlines Co., awarding him:

A.  Damages for lost compensation in the form of backpay and benefits;

B.  Damages in the form of front pay for a reasonable time in the future;

C.  Compensatory damages for emotional distress and mental anguish;

D.  Punitive damages;

E.  Expert witness fees;

F.  His reasonable attorneys' fees; and

G.  The costs of this litigation.

**Jury Demand**

Plaintiff Michael Walthall requests a trial by jury.

/s *Dennis R. Favaro*
One of Plaintiff's Attorneys

Dennis R. Favaro
*dfavaro@favarogorman.com*
Andrew H. Haber
*ahaber@favarogorman.com*
Patricia L. Jochum
*pjochum@favarogorman.com*
Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014
(815) 477-1110

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Michael Walthall | 773-332-1412 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 1542 West Asher Street | Chicago, IL 60643 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Southwest Airlines | 500+ | 214-792-4076 |

| Street Address | City, State and ZIP Code |
|---|---|
| Corporate address: 2702 Love Field Drive | Dallas, Texas 75235 |
| Location of job: 5700 S. Cicero Avenue | Chicago, Illinois 60607 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 10/1/22   Latest: Ongoing

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

**SEE ATTACHED**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the above is true and correct.

SIGNATURE OF COMPLAINANT

07 / 26 / 2023     *Michael Walthall*
Date     Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

## EEOC Charge of Discrimination
## Michael Walthall v. Southwest Airlines

1. Complainant Michael Walthall files this charge of discrimination to redress unlawful acts of employment discrimination committed against him by Respondent Southwest Airlines.

2. Respondent is a covered entity under the Americans with Disabilities Act (ADA).

3. Mr. Walthall is a person with a disability under the ADA because Mr. Walthall has a physical impairment which substantially limits him in one or more life activity.

4. In March of 2016, Mr. Walthall was stopped at a stoplight when strangers fired multiple bullets in the direction of his car, hitting him. He sustained injuries to his lungs and spinal cord. The damage to his spinal cord caused Mr. Walthall to develop paralysis in his legs, and he now uses a wheelchair.

5. Before his injury, Mr. Walthall worked as a Ramp Agent at O'Hare airport. He was passionate about his job as a Ramp Agent and felt that the Airline Industry was where he belonged. Unfortunately, performing his job as a Ramp Agent was no longer possible with his new physical restrictions, so Mr. Walthall had no choice but to leave the industry he loved.

6. In the years that followed, Mr. Walthall obtained a degree in Business Administration and gained work experience in many aspects of this field, including customer service and management. Eventually, he started working as an Administrative Coordinator. While he enjoyed this position and was successful in it, he still held on to his hope of returning to the Airline Industry someday.

7. On August 9, 2022, Mr. Walthall applied for a Customer Service Agent position with Southwest Airlines at Chicago Midway Airport. Mr. Walthall knew that he was highly qualified for this position—having experience in customer service as well as experience working at an airport—and that his disability would not prevent him from successfully performing the functions of the job. It seemed like a perfect opportunity to return to the industry he loved.

8. Mr. Walthall was invited to interview for the position, and on August 31, 2022, he had an interview with a Southwest Airlines recruiter. Throughout the application process, Mr. Walthall was open about his disability. In his interview with the recruiter, he shared the story of how he had acquired his disability and explained how this tied into his excitement about the Customer Service Agent position. The recruiter informed him that he was a great candidate for the role. She also told him that she herself had previously worked as a Customer Service Agent, and that based on her experience she did not think his disability would impact his ability to successfully perform the job.

9. On September 20, 2022, Mr. Walthall received an email notifying him that he had been offered the position. At this time, Southwest sent details on the next steps for the employment screening/onboarding process, which Mr. Walthall promptly completed. Additionally, Southwest informed Mr. Walthall that an employee from Southwest's ADA team would contact him. Mr.

Walthall had an initial call with the employee from the ADA team on September 23, and the two of them arranged to meet on September 30 for a tour of the Midway Airport where they would identify any potential accommodation needs.

10. The tour started in the Departures and Arrivals area, where Mr. Walthall would be completing tasks such as printing boarding passes and tagging bags. To assess the accessibility of the work area, Mr. Walthall wheeled himself behind the ticket counter. He felt that his wheelchair fit comfortably, and there were no mentions during the tour of any concerns about his ability to access or fit in the space. He practiced using the computer, and he and the employee discussed making a few minor adjustments related to the positioning of the computer monitor so that Mr. Walthall could reach it more easily. They then left the Departures and Arrivals area and toured the other areas where Mr. Walthall would work. Like with the computers in the Departures and Arrivals area, the employee and Mr. Walthall discussed a few minor adjustments to help Mr. Walthall better reach the computer monitors in the Boarding area. Other than these minor adjustments to computer monitors, which the employee indicated would not be an issue, Mr. Walthall did not feel that he would need any accommodations.

11. The tour seemed to have gone well, and there were no mentions during the tour of any concerns about Mr. Walthall's ability to perform the job. Feeling confident that everything was finalized regarding his new job with Southwest, Mr. Walthall submitted his resignation to his previous employer on October 1, 2022.

12. Over the next few weeks, Mr. Walthall waited to hear back from Southwest about his start date. When he reached out to check in, Southwest apologized for the wait and told him to hold tight.

13. On October 22, 2022, Mr. Walthall received a call from the Southwest employee from the ADA team. On the call, the employee informed Mr. Walthall that Southwest could not move forward with his employment. She claimed that one area, Arrivals and Departures, had raised a "red flag" for her. According to the employee, Southwest felt that the wheels of Mr. Walthall's wheelchair were too large to fit properly behind the ticket counter in this area.

14. The employee did not mention the possibility of accommodations or attempt to engage in an interactive process to identify potential accommodations, nor did she discuss the alleged issue with Mr. Walthall to try to find a solution.

15. In addition to other solutions and accommodations that could have resolved any perceived issues with Mr. Walthall's ability to perform the Customer Service Agent position, Mr. Walthall would have been able to obtain and use a smaller wheelchair if necessary. Additionally, Southwest could have explored options such as making minor adjustments to the ticket counter to allow for more space. However, without discussing these possibilities or any others, the employee started reassuring Mr. Walthall that, because he was such a strong candidate, she was going to look into what other positions may be available for him with Southwest and get back to him. The call then ended.

16. Mr. Walthall, who felt his chair had fit comfortably behind the ticket counter, and who would have been happy to use a different wheelchair if for some reason his regular chair was a legitimate issue, was left confused and heartbroken. He waited to hear from the employee about other positions, as she had promised, but he never heard from her again.

17. By March of 2023, Mr. Walthall had not yet been able to find a new job and had given up hope of hearing from the Southwest employee about other opportunities. Mr. Walthall, who was still dedicated to his dream of returning to the Airline Industry, looked at Southwest's job postings himself and found a Customer Service Supervisor position at Midway Airport. He knew he would be qualified for this position given his education and managerial experience.

18. Mr. Walthall submitted an online application for the Customer Service Supervisor role, only to receive an automated notification informing him that Southwest has a waiting period before a candidate for a previous position can apply for another position. This meant that because Mr. Walthall had applied for the Customer Service Agent role in August of 2022, his application for the customer service supervisor position would not be considered.

19. Respondent discriminated against Complainant when it wrongfully revoked his job offer based on an unfounded belief that his disability rendered him unqualified for the position. Alternatively, Respondent discriminated against Complainant when it regarded him as disabled and revoked his job offer on the basis of this perception.

20. Respondent discriminated against Complainant when it failed to engage in an interactive process to identify reasonable accommodations for its alleged concerns about the size of his wheelchair, including assignment to another role. Additionally, Respondent discriminated against Complainant when it failed to provide him with a reasonable accommodation to address its concerns about the size of his wheelchair and instead revoked his job offer.

21. Respondent's actions constitute unlawful discrimination under the ADA.

22. Complainant files this charge within the 300-day requirement for violations of the ADA.

23. Complainant seeks all available remedies under the law, including, but not limited to, backpay, compensatory damages, and attorneys' fees.

# EXHIBIT B

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## **DETERMINATION AND NOTICE OF RIGHTS**
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/04/2025

**To:** Michael Walthall
1542 West Asher Street
Chicago, IL 60643
Charge No: 440-2023-08672

EEOC Representative and email:   OLGA HARO
Investigator
olga.haro@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-08672.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
04/04/2025

Amrith Kaur Aakre
District Director

Cc:
Kate Campbell
Southwest Airlines
2702 LOVE FIELD DR # HDQ-4GC
Dallas, TX 75235

Chrishawn Booker
2702 Love Field Dr HDQ 4GC
Dallas, TX 75235

Janet Smith
Janet.Smith2@wnco.com

Sarah M Huttenlocher
Equip for Equality
20 North Michigan Ave Suite 300
Chicago, IL 60602


Please retain this notice for your records.

# EXHIBIT C

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) ss | |
| COUNTY OF COOK | ) | CHARGE NO. 2024CR3642 |

**AFFIDAVIT OF SERVICE**

The undersigned served a copy of the attached <u>**NOTICE OF DISMISSAL AND CLOSURE**</u> on June 10, 2025 to each person named below by email or first class mail, addressed as follows:

For Complainant

Sarah Huttenlocher
Equip For Equality
20 N. Michigan Ave., Ste. 300
Chicago, IL 60602

For Respondent

Chief Executive Officer
Southwest Airlines
2702 Love Field Drive
Dallas, TX 75235

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

[signature]

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Determination has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:

MICHAEL WALTHALL, )
)
)
COMPLAINANT, ) CHARGE NO 2024CR3642
AND )
SOUTHWEST AIRLINES, )
)
)
)
)
)
)
RESPONDENT. )

## NOTICE OF DISMISSAL AND CLOSURE

| For Complainant | For Respondent |
|---|---|
| Sarah Huttenlocher<br>Equip For Equality<br>20 N. Michigan Ave., Ste. 300<br>Chicago, IL 60602 | Chief Executive Officer<br>Southwest Airlines<br>2702 Love Field Drive<br>Dallas, TX 75235 |

DISMISSAL / NOTICE DATE: June 10, 2025

**DISMISSAL**

YOU ARE HEREBY NOTIFIED that the Department has not received a timely request to review the EEOC determination of no cause. Based upon that determination, the DEPARTMENT OF HUMAN RIGHTS (Department) finds that there is a **LACK SUBSTANTIAL EVIDENCE** to support the allegation(s) of the charge(s). Accordingly, pursuant to Section 7A-102(A-1) (3)(a) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code, Chapter II, Section 2520.560), the charge is HEREBY **DISMISSED and CLOSED**.

Complainant may commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately**.
    EEOC, John C. Kluczynski Federal Building
    230 South Dearborn Street, Suite 1866
    Chicago, Illinois 60604.

Complainant is hereby notified that the charge(s) are dismissed with prejudice with no right to further proceed if a timely written complaint is not filed with the appropriate circuit court.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

NOD&C ADOPT LSE Rev 01/13/2025